**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CHARLES KIDDER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-14-CV-665-XR |
| | § | |
| AETNA LIFE INSURANCE COMPANY, | § | |
| TYCO INTERNATIONAL | § | |
| MANAGEMENT COMPANY as Plan | § | |
| Administrator for TYCO | § | |
| INTERNATIONAL HEALTH AND | § | |
| WELFARE BENEFITS PLAN, TYCO | § | |
| INTERNATIONAL HEALTH AND | § | |
| WELFARE BENEFITS PLAN, and | § | |
| SEDGWICK CLAIMS MANAGEMENT | § | |
| SERVICES, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

On this day, the Court considered Plaintiff Charles Kidder's Motions for Summary Judgment (docket nos. 46 and 55) and Defendants' Responses thereto (docket nos. 52 and 56). After careful consideration, the Court will DENY Plaintiff's First Motion for Summary Judgment (docket no. 46) and DENY Plaintiff's Second Motion for Summary Judgment (docket no. 55). Additionally, the Court will construe Defendants' Responses as motions for summary judgment. The Court will GRANT these motions.

## FACTUAL BACKGROUND

Plaintiff Charles Kidder ("Kidder") worked as a technician supervisor for SimplexGrinnel, a subsidiary of Tyco International ("Tyco"). Docket no. 46 at 1. Kidder's primary responsibilities were to supervise the installation of smoke and fire detectors. *Id.* Through his employment with Tyco, Kidder was enrolled in the Tyco Health and Welfare

1

Benefits Plan ("the Plan"), administered by Aetna Life Insurance Company ("Aetna").  Docket no. 52 at 1.

On September 14, 2011, he underwent an anterior cervical discectomy and fusion to relieve debilitating pain and weakness in his back.  *Id.* at 1–2.  In April 2012, Kidder underwent an additional surgery for his back—a cervical anterior discectomy—and a titanium plate was implanted in his spine.  Docket no. 1 at 5.  Aetna denied benefits for this second surgery and related hospital stay.  *Id.* at 6.

After his claims were denied, Kidder hired an attorney who sent a letter to Aetna on November 5, 2012, asking for the reasons Kidder's claim was denied.  Docket no. 46 at 3.  Aetna construed this letter as an appeal and replied with a letter that explained "the claim is not payable because [Kidder's] healthcare coverage ended before [he] received these services."  *Id.*  This letter also stated nine potential reasons that his coverage could have been deemed to have ended.  *Id.*  The letter also indicated that the coverage ended on April 1, 2012, and advised Kidder that he had a right to make a second-level appeal, provided he do so within 60 days.  *Id.*

Kidder's attorney sent another letter on March 22, 2013.  *Id.* at 4.  Aetna replied with a letter explaining that because the letter was outside the 60 days, a second review would not be conducted.  *Id.*

Defendants allege that Kidder's employment ended with Tyco on March 31, 2012, and that his termination was effective April 1, 2012.[1]  Docket no. 52 at 2.  As a result, they contend his health coverage under the Plan ended on April 1, 2012.  *Id.*  Aetna was notified by Tyco of Kidder's termination on May 26, 2012.  *Id.*  Tyco sent Kidder a letter on May 23, 2012, notifying him of the termination of his Plan benefits.  *Id.*  The letter stated that if Kidder wished to

---

[1] It is unclear which of these dates is the official termination date.  However, regardless of whether the termination took place on March 31 or April 1, the Court's analysis is the same.

continue his benefits via the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), he should contact CONEXIS, Tyco's COBRA Administrator. *Id.* Kidder contacted CONEXIS, but despite receiving a notice from CONEXIS that his health coverage had been terminated and that to receive COBRA coverage he would need to submit an election form and pay a COBRA premium, Kidder failed to take such steps. *Id.* at 3.

Kidder claims that he was not terminated on March 31, 2012. Docket no. 46 at 4. Rather, he alleges he was on an unpaid leave of absence. *Id.* However, a COBRA notice indicates that Kidder was in fact terminated on March 31, 2012. *Id.* But Kidder claims this COBRA notice was untimely, and that documents outside of the administrative record indicate that he was not terminated on March 31. *Id.* at 5. Furthermore, the Plan did allow insureds to maintain medical coverage during unpaid leaves of absences by paying the premium during the leave of absence. *Id.* Kidder sent a check for $498.80 to Aetna, but it was sent back to Kidder with a letter explaining it did not know how to apply it. *Id.* Kidder resent the check along with another check for $207.20. *Id.* The check for $207.20 was cashed. *Id.*

## PROCEDURAL HISTORY

On July 24, 2014, Kidder filed suit against Aetna Life Insurance Company ("Aetna"), Tyco International Management Company as Plan Administrator for Tyco International Health and Welfare Benefits Plan ("Tyco as Plan Administrator"), Tyco International Health and Welfare Benefits Plan (the "Plan"), and Sedgwick Claims Management Services ("Sedgwick") (collectively "Defendants"). Docket no. 1.[2] His amended complaint brings both claims pursuant to the Employee Retirement Income Security Act (ERISA) and non-ERISA claims. Docket no. 28.

---

[2] This case was initially assigned to Senior Judge Harry Lee Hudspeth. Judge Hudspeth entered various orders, but the case was later transferred to the undersigned judge on January 20, 2016.

On March 9, 2015, Kidder filed his first Motion for Summary Judgment.  Docket no. 46. It requests summary judgment be granted in Kidder's favor on two issues.  *Id.* at 1.  First, he asks that the Court find Aetna's decision to deny him medical benefits for his surgery was an abuse of discretion.  Docket no. 46-4 at 1.  He also moves that the Court hold Tyco as Plan Administrator liable under 29 U.S.C. § 1132(c) for failure to provide the 2012 health plan document within 30 days of his request.  *Id.*  Defendants filed their Joint Response on April 10, 2015.  Docket no. 52.

Kidder filed his Second Motion for Summary Judgment on October 16, 2015.  Docket no. 55.  It asks that the Court find Aetna committed substantial violations of the claim procedures set forth by ERISA and that this should result in a remand.  *Id.* at 9.  Additionally, he again moves that the Court find Tyco as Plan Administrator liable for allegedly failing to provide the plan documents to him pursuant to 29 U.S.C. § 1132(c).  *Id.*  Defendants filed their Response to this motion on November 2, 2015.  Docket no. 56.  This Court held a hearing on both motions on February 16, 2016.  In their Responses, Defendants urged the Court to "enter judgment in favor of Defendants and dismiss Plaintiff's ERISA claim with prejudice."  Docket no. 52 at 10.  Thus, the Court will construe both Responses as a motion for summary judgment.  *See Anderson v. Colvin*, Civ. Ac. No. 4:13-1622, 2014 WL 1052442, at *1 (S.D. Tex. Mar. 18, 2014) (construing a defendant's response to a motion for summary judgment that sought a dismissal as a motion for summary judgment).

## STANDARDS OF REVIEW

### I.    Summary Judgment

Standard summary judgment rules still control when a Court evaluates a motion for summary judgment in an ERISA case. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004).  Summary judgment is proper when the evidence shows "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).  To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense.  *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson*, 477 U.S. at 250 n. 4. In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000).

## II.     ERISA

A plan participant who is denied benefits under an ERISA plan can sue to recover them. *See* 29 U.S.C. § 1132(a)(1)(B) (authorizing the cause of action). This Court has jurisdiction to

review determinations made by an ERISA employee benefit plan. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc) *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008). A Plan Administrator's factual determinations are always reviewed for abuse of discretion. *Vercher*, 379 F.3d at 226. However, its construction of the meaning of plan terms or plan benefit entitlement provisions is reviewed *de novo* unless there is an express grant of discretionary authority in that respect; and if there is such a grant, then review of those decisions is also for abuse of discretion. *Id.* Here, Kidder concedes that Aetna has been given discretion to interpret the plan, and thus the standard of review is abuse of discretion. Docket no. 46 at 7 n. 3.

Courts in the Fifth Circuit apply a two-step process to determine whether there is an abuse of discretion regarding policy interpretation. *Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1036 (5th Cir. 2015); *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992). "First, we determine whether the Administrator and Committee's determination was legally correct. If so, the inquiry ends and there is no abuse of discretion. Alternatively, if the court finds the administrator's interpretation was legally incorrect, the court must then determine whether the administrator's decision was an abuse of discretion." *Stone*, 570 F.3d at 257 (citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008)); *see also Wildbur*, 974 F.2d at 637. If the administrator's interpretation directly contradicts the plain meaning of the plan language, then the administrator has abused his or her discretion. *Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 727 (5th Cir. 2001).

For findings of fact, a claims administrator does not abuse its discretion unless the decision is arbitrary and capricious. *Meditrust Fin. Serv. Corp. v. Sterling Chem., Inc.*, 168 F.3d

211, 214 (5th Cir. 1999).   A decision is arbitrary or capricious if made without a rational connection between the known facts and the decision.  *Dix v. Blue Cross & Blue Shield Ass'n Long Term Disability Program*, 613 F. App'x 293, 295 (5th Cir. 2015) (citing *McCorkle v. Metropolitan Life Ins. Co.*, 757 F.3d 452, 457 (5th Cir. 2014).  Furthermore, a decision is not arbitrary or capricious if it is supported by substantial evidence.  *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 273 (5th Cir. 2004). For the factual findings to be supported by substantial evidence, there need only be a rational connection between the known facts and the decision or between the found facts and the evidence.  *See Meditrust*, 168 F.3d at 215 ("A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'") (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828–29 (5th Cir. 1996))).  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Ellis*, 394 F.3d at 273.  If the Plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.  *Id.*  "[R]eview of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end."  *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (quoting *Corry v. Liberty Life Assurance Co. of Boston,* 499 F.3d 389, 398 (5th Cir. 2007)).

When assessing factual questions, this Court is constrained to the evidence before the Plan Administrator.  *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 394 (5th Cir. 2006) (quoting *Vega*, 188 F.3d at 299).  "The administrative record consists of the relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that

gives the administrator a fair opportunity to consider it." *Vega*, 188 F.3d at 300.  The Court may

not review evidence outside the administrative record to resolve an issue of fact.  *See id.*

## ANALYSIS

### I.   Denial of Coverage

Kidder brings a claim against Aetna and the Plan for health benefits related to his surgery

in April 2012 under 29 U.S.C. § 1132(a)(1)(B).  Docket no. 28 at 10.  In his first Motion for

Summary Judgment, Kidder asks the Court to find that Aetna's decision to deny coverage for his

second surgery was an abuse of discretion and to award him damages.  Docket no. 46 at 9.  In his

second Motion for Summary Judgment, Kidder moves that the Court determine Aetna committed

a substantial procedural violation and remand the case back to the administrator to give him an

opportunity to extend his coverage.  Docket no. 55 at 9.

### A.  Failure to Exhaust Administrative Remedies

Before the Court addresses Kidder's arguments, it is necessary to examine its jurisdiction

over this case.  The Fifth Circuit requires claimants seeking to recover benefits from an ERISA

plan to exhaust all administrative remedies before bringing a suit to recover benefits.

*Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004); *Bourgeois v. Pension*

*Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000).  Here, Kidder failed

to timely file a second appeal, as is laid forth in Aetna's "Appeal Process and Member Rights"

document.  Docket no. 37-5 at 35; docket no. 37-2 at 13.

However, ERISA exhaustion is not necessarily a prerequisite to federal court jurisdiction.

*See Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 n. 6 (5th Cir. 1995) (explaining because

exhaustion is not required by ERISA, it is not prerequisite to jurisdiction).  As a result, courts can

excuse a plaintiff's failure to exhaust available administrative remedies on equitable grounds.

*McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004). Thus, at the very least, the Court has subject matter jurisdiction over these claims.

Of course, even though the Court has determined it has jurisdiction, summary judgment may still be proper on the grounds that Kidder did not exhaust his administrative remedies and there is no excuse for such failure. *See, e.g.*, *McGowin*, 363 F.3d at 558; *Glenn v. L. Ray Calhoun & Co.*, 83 F. Supp. 3d 733, 741–42 (W.D. Tex. 2015). Defendants have not filed a motion to dismiss arguing that Kidder has failed to exhaust his administrative remedies. However, the Responses to Kidder's Motions for Summary Judgment—which the Court has construed as motions for summary judgment in favor of the Defendants on the issues discussed—do briefly address the argument. They state that "Plaintiff's failure to file a timely second-level appeal provides a separate, sufficient ground to deny Plaintiff's Motion." Docket no. 52 at 8 (citing *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018 (5th Cir. 2009)).

It seems uncontested that Kidder failed to timely file a second appeal. In his Amended Complaint, Kidder requests that Tyco as Plan Administrator "be enjoined from claiming that Kidder didn't complete the administrative process by filing a second administrative appeal, if the second appeal was mandatory rather than voluntary." Docket no. 28 at 10. He alleges that "[n]either the Plan Administrator nor Aetna provided sufficient information for Kidder to know whether the health plan required a second appeal before filing suit for enforcement of the plan terms under § 1132(a)(1)(B)." *Id.* But courts in the Fifth Circuit have explained that a plaintiff must exhaust an administrative remedy even if that remedy is phrased permissively. *See Long v. Aetna Life Ins. Co.*, Civ. Ac. No. 14-403, 2014 WL 4072026 (E.D. La. Aug. 18, 2014). Furthermore, "plaintiffs seeking ERISA plan benefits are bound by the plan's administrative

procedures and must use them before filing suit even if they have no notice of what those procedures are." *Bourgeois v. Pension Plan for Employees of Santa Fe Intern. Corps.*, 215 F.3d 475, 480 (5th Cir. 2000).

However, given that the briefing schedule entered by Judge Hudspeth did not call for Kidder to file a reply to Defendants' Responses, the Court has not had the opportunity to entertain an argument from Kidder as to why summary judgment should not be granted in favor of Defendants on the grounds of failure to exhaust his administrative remedies. While the Court finds no evidence of futility in the administrative record, Kidder may contend that filing a second appeal would be futile and offer competent summary judgment evidence evincing that fact. *See Bourgeois*, 215 F.3d at 479 (explaining that futility is an exception to the affirmative defense of failure to exhaust administrative remedies). This, in combination with the fact that Defendants simply cited it as a reason to deny Kidder's motions but did not attempt themselves to show there was no genuine issue of material fact regarding the issue, will prevent the Court from granting summary judgment in favor of the Defendants on the denial of Kidder's benefits as a result of his failure to exhaust administrative remedies. At the same time, given that documents in the administrative record show that Kidder did not file a second appeal within the 60-day deadline, Kidder has not shown that "there is no genuine dispute as to any material fact" and that he is entitled to judgment as a matter of law in his claim for benefits. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). His motions for summary judgment on his claim for benefits under 29 U.S.C. § 1132(a)(1)(B) are denied.

B. Abuse of Discretion

However, even if the Court did not deny Kidder's motions on the above grounds, both should be denied and summary judgment should be entered in favor of Defendants because the

administrative record shows Aetna committed no procedural violation and did not abuse their discretion in denying Kidder's claim.

In his first Motion for Summary Judgment, Kidder asks the Court to find that Aetna's decision to deny coverage for his second surgery was an abuse of discretion and to award him damages.  Docket no. 46 at 9.  To support his motion, he argues that Aetna committed a substantial procedural violation because in issuing its denial, it "just repeat[ed] a list of plan terms that [had] the potential to cause coverage to be denied" which left "the claimant and the court guessing as what plan terms they [chose] to rely on to deny coverage."  *Id.* at 7.  Second, Kidder maintains that there is not substantial evidence in the record that shows he was terminated from his employment on March 31, 2012, because Tyco sent Kidder a confirmation of coverage on April 9, 2012, and accepted a premium payment of $207.20 on June 5, 2012.[3] Docket no. 46 at 8.  Kidder does acknowledge that the June 1, 2012, COBRA notice in the administrative record states that he was terminated on March 31, 2012.  *Id.*  Finally, Kidder maintains that there is no evidence in the administrative record that shows his coverage was terminated due to non-payment of premiums.  *Id.* at 9.  For these three reasons, he argues that Aetna's final decision was an abuse of discretion.  *Id.* (citing *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th Cir. 2006)).

In his second Motion for Summary Judgment, Kidder moves that the Court determine Aetna committed a substantial procedural violation and remand the case back to the administrator to give him an opportunity to extend his coverage, instead of finding the decision was an abuse of discretion and that he should be awarded damages.  Docket no. 55 at 9.  Counsel

---

[3] Kidder also encourages the Court to take note of several "Leave of Absence Direct Bills" sent by Tyco.  However, these documents are not part of the administrative record and Judge Hudspeth previously denied a motion to supplement the administrative record.  As such, the Court cannot consider them in making its determination.  *See Vega*, 188 F.3d at 300.

confirmed this position at the Court's hearing.  Hearing Tr. at 14, 27.  In the motion, Kidder

argues that Tamar Williams, Aetna's employee, committed a substantial procedural violation

because she failed to include required information in her initial denial of Kidder's coverage.

Docket no. 55 at 7.  Kidder cites to 29 C.F.R. § 2560.503-1(g), which provides:

> (1) Except as provided in paragraph (g)(2) of this section, the plan
> administrator shall provide a claimant with written or electronic
> notification of any adverse benefit determination. Any electronic
> notification shall comply with the standards imposed by 29 CFR
> 2520.104b–1(c)(1)(i), (iii), and (iv). The notification shall set forth,
> in a manner calculated to be understood by the claimant—
>> (i) The specific reason or reasons for the adverse
>> determination;
>> (ii) Reference to the specific plan provisions on which the
>> determination is based;
>> (iii) A description of any additional material or information
>> necessary for the claimant to perfect the claim and an
>> explanation of why such material or information is
>> necessary . . .

29 C.F.R. § 2560.503-1(g).  He alleges that he should have been told the specific reason his

coverage was terminated, rather than just that his coverage had ended.  Docket no. 55 at 9.

According to Kidder, this failure severely prejudiced him, and if Aetna had done so he would

have either paid his unpaid premiums or enrolled in COBRA continuation coverage by the

required deadline.  *Id.* at 9, 10 (citing *Lafleur v. Louisiana Health Services and Indem. Co.*, 563

F.3d 148, 159–160 (5th Cir. 2009).

     In their Responses, Defendants argue that Aetna did not abuse its discretion in denying

Kidder's claim because his eligibility ended when his employment terminated.  Docket no. 52 at

4.  They point out that even if an administrator's decision is on the "low end" of reasonableness,

it is not an abuse of discretion.  *Id.* (citing *Spenrath v. Guardian Life Ins. Co. of Am.*, 564 F.

App'x 93, 97 (5th Cir. 2014)).  Defendants contend that Kidder's employment ended on April 1,

2012, and Tyco informed Aetna of this fact on May 26, 2012.  *Id.*  Furthermore, Tyco was the

entity responsible for making determinations about Kidder's employment, and Aetna was "entitled to rely upon those determinations." *Id.* at 5. They believe that the administrative record contains "more than substantial evidence" to support Aetna's decision to deny benefits and that "Aetna did not act arbitrarily or capriciously in denying" Kidder's claim. *Id.* Furthermore, Defendants argue that Aetna committed no procedural violation. *Id.* They maintain that Aetna's communication with Kidder did clearly state the reason for denial of benefits: his coverage had ended. *Id.* at 6. Thus, Aetna and Tyco "more than substantially complied with the procedural requirements of Section 1133." Docket no. 56 at 6. The Court agrees.

### 1. *Substantial evidence of Kidder's termination*

First, the Court finds that there is substantial evidence in the administrative record that Kidder had been terminated by Tyco. As a result, Aetna's decision to deny Kidder benefits was not arbitrary and capricious and it did not abuse its discretion.

The Fifth Circuit has explained that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986); *see also Ellis*, 394 F.3d at 273. Additionally, whether or not a plaintiff can support his or her claim with substantial evidence is not the relevant inquiry. *Ellis*, 394 F.3d at 273. Rather, a court looks at whether the plan administrator's decision is supported by substantial evidence. *Id.* ("We are aware of no law that requires a district court to rule in favor of an ERISA plaintiff merely because he has supported his claim with substantial evidence, or even with a preponderance. If the plan fiduciary's decision is supported by substantial evidence

13

and is not arbitrary and capricious, it must prevail."); *see also Albert v. Life Ins. Co. of N. Am.*, 156 F. App'x 649, 655 (5th Cir. 2005).

For example, in *Albert*, a plaintiff appealed the denial of her long-term disability benefits by the plan administrator. *Id.* at 650. She urged the district court to examine multiple pieces of evidence outside of the administrative record. *Id.* at 653. Additionally, she maintained that several pieces of evidence in the record should not be believed for one reason or another. *Id.* at 654. However, the Fifth Circuit upheld the district court's grant of summary judgment in favor of the plan administrator. *Id.* at 655. It explained that the district court was correct in its decision not to consider evidence from outside the administrative record and that a plan administrator's decision to deny benefits does not have to be indisputable, but merely based on some evidence within the record. *Id.* (citing *Vega,* 188 F.3d at 299).

The administrative record in this case contains "more than a scintilla" of evidence that Kidder was terminated on March 31, 2012, and that was the reason Aetna denied his claim for benefits. A screenshot of an Aetna file shows that Aetna was told by Tyco that Kidder had been terminated on that date. Docket no. 37-4 at 4. That file listed "Termination" as a "Qualifying Event" and noted that Kidder needed to elect COBRA coverage by August 3, 2012. *Id.* Furthermore, there is a Tyco personnel form that states Kidder was terminated as of March 31, 2012. Docket no. 37-4 at 15.

Moreover, the administrative record shows that Kidder had notice that his benefits were denied because he had been terminated. A letter from CONEXIS to Kidder sent June 1, 2012, states that his coverage ended because he had been terminated, and that the date of coverage loss was March 31, 2012. Docket no. 37-3 at 22. This letter also instructed Kidder that if he wished to continue his coverage, he needed to complete a COBRA election form and pay a COBRA

14

premium.  *Id.*  The administrative record also shows Kidder called and spoke to someone about what he needed to do to elect COBRA coverage.  Docket no. 37-4 at 5.

These documents provide "more than a scintilla" of evidence that Aetna denied Kidder's claim for benefits because it had been told by Tyco that Kidder had been terminated.  Such a decision by Aetna has a "rational connection" to the known facts—Kidder had been terminated, and thus was no longer eligible for benefits.  *See Meditrust*, 168 F.3d at 215.  This decision was supported by substantial evidence and was thus not arbitrary and capricious.  As a result, Aetna's decision was not an abuse of discretion and must prevail.  *See Ellis*, 394 F.3d at 273.

### 2.  *No substantial procedural violation*

Second, the Court concludes that there is no question of material fact and that Aetna did not commit a substantial procedural violation.  29 U.S.C. § 1133(1) provides that an ERISA plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial . . . ." 29 U.S.C. § 1133 (2012).   "Challenges to ERISA procedures are evaluated under the substantial compliance standard."  *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392–93 (5th Cir. 2006) (citing *Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 257 (5th Cir. 2005); *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 775 (7th Cir. 2003); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 460 (6th Cir. 2003).  As a result, "technical noncompliance" is excused so long as "the purposes of section 1133" are fulfilled.  *Id.* at 493 (citing *White v. Aetna Life Ins. Co.,* 210 F.3d 412, 414 (D.C. Cir. 2000)).   The Fifth Circuit has previously explained that "[t]he purpose of section 1133 is to . . . ensure meaningful review of [a] denial [of benefits." *Rossi v. Precision Drilling Oilfield Services Corp. Employee Benefits Plan*, 704 F.3d 362, 367– 68 (5th Cir. 2013).

Here, Kidder was provided the specific reason his benefits were denied: his coverage had

been terminated per Tyco's instructions.  *See* docket no. 37-2.  Kidder was told:

> Our records show that Mr. Kidder's coverage ended on April 1,
> 2012; therefore, the claims are not eligible for payment.  If this
> information is incorrect in any kind of way, the employer needs to
> be contacted.   Aetna does not certify eligibility, as it is the
> employer's responsibility.

*Id.*  Kidder seems to argue that Aetna was responsible for informing him why his coverage was

terminated by Tyco.  However, the statute merely requires Aetna to inform him why his benefits

were denied—a different inquiry.  Moreover, the substantial compliance standard looks at "all

communications between an administrator and plan participant to determine whether the

information provided was sufficient under the circumstances."  *See Moore v. LaFayette Life Ins.

Co.*, 458 F.3d 416, 436 (6th Cir. 2006).   Here, Kidder was aware that the reason Aetna

considered his coverage to have ended was because Tyco had terminated him—the COBRA

letter from CONEXIS stated as such, and Kidder made a phone call confirming his notice of

such.  Docket no. 37-3 at 22; docket no. 37-4 at 5.

The Court has determined that there is no question of material fact and that Aetna did not

commit a substantial procedural violation.  Additionally, as explained above, the Court finds that

Aetna did not abuse its discretion in denying Kidder's claim for benefits because there is

substantial evidence in the administrative record that Kidder had been terminated, and thus its

decision was neither arbitrary nor capricious.   As a result, Kidder's Motions for Summary

Judgment are denied as to his claim for benefits under 29 U.S.C. § 1132(a)(1)(B).  Defendants'

request for judgment in favor of Defendants found in their Responses—construed by the Court as

motions for summary judgment—are granted as to this claim.

## II.      Failure to Provide the Plan Documents

Kidder brings a claim against Tyco as Plan Administrator under 29 U.S.C. § 1132(c) for failing to provide him with plan documents as is required by 29 U.S.C. § 1024(b)(4).  Docket no. 28 at 10.  In both motions for summary judgment, he argues that he sent four written requests for information to Tyco as Plan Administrator between May 20, 2013, and March 6, 2014, and all four were ignored.  Docket no. 46 at 9.  The first three requests are part of the administrative record.  Docket nos. 37-1, 37-2.

Tyco as Plan Administrator claims it did not receive any of the four requests and thus should not be faulted for its failure to respond.  Docket no. 52 at 8. It maintains that its failure was caused by matters reasonably beyond its control, which would exempt it from liability under the statute.  *Id.*  Furthermore, Tyco as Plan Administrator argues that it should not be held liable for three other reasons.  *Id.*  First, it alleges for the first three letters, Kidder was "not requesting 'a copy of the latest updated summary plan description . . . or other instruments under which the plan is established or operated'" and thus the request was not within the narrow confines of 29 U.S.C. § 1024(b)(4).  *Id.*  Second, Tyco as Plan Administrator argues that the first three requests for information were sent to the wrong entity and wrong address.  *Id.* at 9.  Finally, as to the last request, it contends that the deadline for Kidder to file a second appeal had expired more than a year before the date of the request, and thus, any failure to provide the Plan documents could not have prejudiced Kidder's ability to challenge Aetna's determination.  *Id.* at 10.

29 U.S.C. § 1024(b)(4) requires plan administrators to, "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary [ ] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  If

a plan administrator fails to comply with this requirement, courts have discretion to impose a penalty of up to $100 per day.  29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c–1.

The imposition of a statutory penalty is within the discretion of the district court.  *Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf Inc.*, 637 F.2d 357, 362 (5th Cir. 1981).  To make this determination, courts consider:  "(1) bad faith by the administrator, (2) the length of delay, (3) the number of requests, (4) the documents withheld, and (5) the existence of any prejudice to the plan participant."  *Thomason v. Metro. Life Ins. Co.*, Civ. Ac. No. 3:14-CV-0086-P, 2016 WL 791044, at *7–8 (N.D. Tex. Feb. 25, 2016) (citing *Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3d Cir. 2002); *Friz v. ADS Power Res., Inc.,* Civ. Ac. No. 3:00–CV–1116–D, 2001 WL 732197, at *4 (N.D. Tex. June 27, 2001)).  While a plaintiff is not required to show he was prejudiced in order to be entitled to penalty damages under the statute, the Fifth Circuit has suggested that a court should consider it in exercising its discretion.  *Godwin v. Sun Life Assur. Co. of Canada*, 980 F.2d 323, 327 (5th Cir. 1992).

Additionally, the Fifth Circuit has held that "[a]s a penalty provision section 1132(c) must be strictly construed."  *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990).  In *Fisher*, the plaintiff requested "a copy of the policies covering [her] contract for salary continuation."  *Id.*  The court ruled that this request did not meet the narrow confines of 29 U.S.C. 1024(b)(4).  *Id.*  Thus, the district court was within its discretion in deciding to decline to award penalty damages.  *Id.*

A.  First Three Requests

At the Court's February 16, 2016 hearing, counsel for Kidder conceded that the first three letters and any failure by Tyco as Plan Administrator to respond to them do not entitle Kidder to penalty damages under 29 U.S.C. § 1132(c).  Hearing Tr. at 24.  As Defendants point

out and Kidder has conceded, these requests were for documents related to the cancellation of Kidder's coverage, not the documents listed in 29 U.S.C. 1024(b)(4). Docket no. 56 at 11. Moreover, the requests were sent to the wrong organization and the wrong address. *Id.* The Summary Plan Descriptions state that any requests for Plan documents should be sent to Tyco International Management Company, 9 Roszel Road, Princeton, New Jersey, 08540. Docket no. 33 at 64. But Kidder sent the first three requests to Tyco Benefits, P.O. Box 8269, Princeton, New Jersey, 08543. *Id.* at 8, 14, 26. Other courts in the Fifth Circuit have declined to award penalty damages when a plaintiff sends his or her request for Plan documents to the wrong address. *See Mouton v. Mobil*, Civ. Ac. No. H-00-1403, 2001 WL 963957, at *10–11 (S.D. Tex. June 18, 2001). Given that these three letters did not specifically seek documents enumerated in 29 U.S.C. 1024(b)(4), were sent to the wrong entity at the wrong address, and that Kidder has conceded the issue, the Court finds that Kidder is not entitled to under 29 29 U.S.C. § 1132(c) for the first three requests. Kidder's motions for summary judgment on these claims are denied and Defendant's request for judgment as to these claims are granted.

### B. Fourth Request

The fourth request for Plan documents sent by Kidder's counsel does specifically ask for "the plan document covered by Mr. Kidder in 2012." Dahl Aff. at 2. It was sent to the correct address and the correct entity. *Id.* However, as Defendants point out, this request was sent more than a year after Kidder's deadline to file a second appeal had expired. Docket no. 56 at 10. Additionally, Kidder has alleged no facts that indicate any bad faith on the part of the administrator or the existence of any prejudice to him in preparing for this lawsuit. *See Thomason*, 2016 WL 791044 at *7–8.

Courts in the Fifth Circuit regularly deny a request for penalty damages when the plaintiff does not allege bad faith by the defendant or show that it has been somehow prejudiced. *See, e.g., Godwin*, 980 F.2d at 327 (determining that the district court's decision not to award penalty damages because plaintiff was not prejudiced was not an abuse of discretion); *Shelby County Health Care Corp. v. Genesis Furniture Indus., Inc.*, 100 F. Supp. 3d 577, 585 (N.D. Miss. 2015); *Mouton*, 2001 WL 963957 at *10–11. In *Mouton*, the plaintiff argued that he had been prejudiced by the defendant's failure to provide him the plan documents because he was "'hampered' in his ability to prepare for the lawsuit," experienced "frustration and aggravation," and was "prevented from knowing the reason for denial of benefits." *Id.* at 10. In spite of these allegations, the court determined he had not been prejudiced because the documents did not contain information that "would have materially added to the Administrator's explanation for the denial of benefits" and the documents were provided to the plaintiff early on in the lawsuit. *Id.* at 11. As a result, the court declined to award penalty damages. *Id.*

Similarly, the document requested here would not have offered Kidder a more detailed explanation as to why his benefits were denied. Even if it had, the request was not sent until well after Kidder could no longer file a second appeal, and the document was provided to Kidder well in advance of his deadline to file his brief in this lawsuit. Kidder has not shown that he was prejudiced by Tyco's failure to respond to this fourth request, and thus the Court will exercise its discretion and decline to award penalty damages under 29 U.S.C. § 1132(c). Kidder's motions for summary judgment on this fourth request are denied and Defendants' request for judgment as a matter of law as to this claim is granted.

**CONCLUSION**

Plaintiff Charles Kidder's first and second Motions for Summary Judgment (docket nos. 46 and 55) are DENIED.   Additionally, the Court construes Defendants' Responses thereto (docket nos. 52 and 56) as motions for summary judgment. Those motions are GRANTED.   The Court finds Defendants are entitled to judgment as a matter of law as to Kidder's claim for benefits for his back surgery under 29 U.S.C. § 1132(a)(1)(B) and Kidder's claim for penalty damages under  29 U.S.C. § 1132(c).  Those claims are dismissed on the merits.

The only remaining claims in this case are Kidder's state law claims related to the denial of his short-term disability benefits.   The parties are hereby ordered to submit a proposed scheduling order for those remaining claims by April 11, 2016.

It is so ORDERED.

SIGNED this 28th day of March, 2016.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE